## Edwards v. Arvin.

(Decided March 11, 1938.)

HUGH RIDDELL for appellant.

SHUMATE & SHUMATE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On September 1, 1926, the appellant and defendant below, Dr. E. E. Edwards, traded a farm, which he owned in the state of Ohio, to one Sandlin in consideration of the latter conveying to Edwards a farm in Estill county, Ky., located about twelve miles from Irvine, its county seat, and upon which there was then being conducted by Sandlin a country general store which had been operated by its various owners since 1906 when the business was first started by the then owner of the farm. By virtue of that exchange of property, Edwards became the owner of the Estill county farm and all buildings thereon, including the store building and its contents; but he was engaged in practicing medicine and had no one to operate the farm or the store. In that situation he formed a partnership with A. J. Arvin, the appellee and plaintiff below, whereby the latter agreed to operate the store for one-half of the net profits in consideration of Edwards furnishing the capital stock—Arvin contributing nothing over and above his services.

The agreement was oral, and there is a dispute as to whether it also embraced the operation of the farm,

as well as whether or not it entitled Arvin to free occupation of the residence located upon the farm and near to the store building. At any rate, Arvin moved with his family into the residence and immediately began the operation of the store, as well as the management and control of the farm, which he continued to do throughout a period of seven or eight years, at the end of which time Edwards had become considerably indebted to various persons, some of whom had obtained judgments and levied executions on his interest in the mercantile partnership as well as upon other property he owned. Other creditors obtained attachments against him and made similar levies. At that juncture Arvin filed his independent equity action in the same court (Estill circuit court) asking for a dissolution of the partnership and an accounting between the partners, alleging in his petition what he claimed to be a correct statement of the partnership affairs, and asked that all partnership accounts be settled before any of the creditors who had obtained execution and attachment liens should be paid. That suit was consolidated with the other actions by the creditors of Edwards, and the answer of the latter to Arvin's petition denied the basis of settlement therein set out and averred the status of the partnership as contended for by him. Following pleadings made the issues and quite a voluminous record of testimony was taken. There were many disputed items of the partnership affairs made by the respective partners, but upon final submission the court adjusted all of them in accordance with what he determined to be the facts as established by the proof. It found that the partnership embraced the management of the farm as well as the conducting of the mercantile business located thereon, and that by its terms Arvin should be charged nothing for the rent of the residence on the farm, which he and his family occupied during the existence of the partnership.

Arvin contended, among other things, that under the terms of the partnership Edwards agreed to pay all taxes assessed against both the mercantile business, as well as the farm, but that he had failed to do so, during the continuance of the partnership, to the extent of about $1,230, which had been paid out of the earnings and profits of the partnership and that Edwards should be charged with that amount. The court refused to do that; but Arvin has prosecuted no cross-appeal from

that ruling, and we are thereby barred from reviewing it, regardless of the state of proof on that issue. On some of the issues, involving minor matters, the proof is considerably conflicting; but we have concluded that there was evidence to sustain the finding of the court with reference thereto, and under the well-established rule, none of the court's findings thereon will be disturbed.

However, one error of somewhat major proportions is presented by the appeal taken by Edwards from the judgment of the court settling the partnership, which is: That the court in its judgment allowed Edwards only 60 per cent. of the invoice value of the goods constituting the stock of merchandise at the time the partnership was formed and Arvin took charge, and also allowed him only 60 per cent. of the invoice price of an additional amount of goods later put into the stock by him. The invoice prices of such amounts was $2,704.99 as the value of the stock at the time Arvin took charge, and $413.30, the amount of a later replenishment of the stock by Edwards, making a total amount, according to invoice prices, of $3,118.29, as furnished by him to the operating capital of the firm.

The law, allowing to each member of a firm advances made by him to the capital stock of the firm upon its dissolution, is firmly settled in the law of partnership. See 20 R. C. L. 1022, sec. 264; 47 C. J. 1163, sec. 848; Wolf v. Levi, 33 S. W. 418, 17 Ky. Law Rep. 1024; Meadows v. Mocquot, 110 Ky. 220, 61 S. W. 28, 22 Ky. Law Rep. 1646; Johnson v. Jackson, 130 Ky. 751, 114 S. W. 260, 17 Ann. Cas. 699; and cases referred to in those opinions. Furthermore, the rule is equally well settled that a partner who furnished only his labor, and under the terms of the partnership is entitled to share only in the profits of the business, is not entitled to share in the capital stock originally furnished by the other partner. That principle is thus stated in the cited text from 20 R. C. L.: "Where one partner furnishes no capital but contributes merely his time, skill and services, the presumption on dissolution of the partnership is that he is not entitled to any part of the firm capital; and even where the agreement is that the profits and losses are to be shared equally, the partner who contributes only his services is not entitled on dissolution to any part of the firm capital." In the cited Johnson

case that principle was given thorough consideration by us, wherein we referred to text writers on the subject, as well as a number of cases from foreign jurisdictions in substantiation of and in accord with the excerpt supra from the text of 20 R. C. L. Among the cases so cited is that of Chamberlain v. Sawyers, 32 S. W. 475, 17 Ky. Law Rep. 716, approving the same principle.

Indeed, Arvin does not appear—either in his pleadings or in brief of counsel—to dispute the proposition that under the terms of partnership he (Arvin) did not become entitled on dissolution to share in the original capital stock; but, as stated, both he and his counsel do contend and argue that he is not bound to accept the *invoice* value of the capital when furnished by Edwards to the firm, but which valuation was accepted by him at the times without complaint. However, both the Johnson and Chamberlain cases appear to announce a contrary principle, as was also done by us in the domestic Wolf Case, supra, and the holdings of those cases are in accord with the general rule on the subject, as stated in the text in 47 C. J. 1168, sec. 856, saying: "Where the valuation of firm assets has been set by agreement of the parties such value will control, in the absence of fraud, despite subsequent depreciation in the value of the assets." Many cases cited in notes 92, 93, 94, and 95 to that text completely support it.

Of course it is competent for the parties to agree upon such matters; but when there is no such agreement in the articles of partnership, then the rules supra are to be followed. There are no such modifying agreements shown in this case, and we are unable to find any foundation for the court's ruling in allowing appellant, Edwards, only 60 per cent. of the valuation of the invoice price of the stock that he furnished to the firm. The partnership should, therefore, be settled on the basis of allowing him 100 per cent. of such invoice valuations instead of the 60 per cent. basis allowed by the court. All other disputed questions and items argued by appellant's learned counsel as constituting errors in the court's judgment are overruled, since we conclude there is sufficient evidence to support the court's finding in regard to them.

For the reasons stated, the judgment is reversed, with directions to render one according to the correct rule as hereinbefore advanced, i. e., by first crediting,

out of the partnership assets, to defendant and appellant, 100 per cent. of the invoice valuation of the stock furnished by him, amounting to $3,118.39, and to then adjudge the rights of his lien creditors supra, in and to that allowance according to equitable principles, and for other proceedings consistent with this opinion.